# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 17-CR-648 (FAB) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SENTENCING HEARING |
| | ) | |
| [1] ANGEL DE LA CRUZ, | ) | |
| Defendant. | ) | |

TRANSCRIPT OF SENTENCING HEARING
HELD BEFORE THE HONORABLE JUDGE FRANCISCO A. BESOSA
SAN JUAN, PUERTO RICO
Thursday, July 12, 2018

APPEARANCES:

For the United States:      DAVID THOMAS HENEK, SAUSA
                            United States Attorney's Office
                            Torre Chardón, Suite 1201
                            350 Carlos Chardón Street
                            San Juan, PR 00918


For the Defendant:          YASMIN A. IRIZARRY, AFPD
                            Federal Public Defender's Office
                            Patio Gallery Building
                            241 Franklin D. Roosevelt Ave.
                            Hato Rey, PR 00918-2441

Produced by mechanical stenography; computer-aided
transcription

1           (PROCEEDINGS COMMENCED AT 10:20 A.M.)

2

3           THE CLERK:  Criminal Case No. 17-648, United States

4   of America versus Angel De La Cruz for Sentencing Hearing.

5           On behalf of the Government, Assistant United

6   States Attorney David Thomas Henek.

7           On behalf of the Defendant, Assistant Federal

8   Public Defender Yasmin A. Irizarry.

9           Defendant is present and assisted by the certified

10  court interpreter.

11          MR. HENEK:  Good morning, Your Honor.  David Henek

12  on behalf of the Government.  The Government is ready to

13  proceed.

14          MS. IRIZARRY:  Good morning, Your Honor.  Yasmin

15  Irizarry on behalf of Mr. De La Cruz.  And we are ready to

16  proceed as well.

17          THE COURT:  Ms. Irizarry, is there anything you

18  would like to say on behalf of Mr. De La Cruz?  And I have

19  read your sentencing memorandum, which also includes

20  objections to the pre-sentence investigation report.

21          MS. IRIZARRY:  Yes, Your Honor.

22          As the Court then is aware, I have two objections

23  to the pre-sentence investigation report, and I also have one

24  request for a variance.

25          Before the Court probably indicates, I was able to

1   discuss with the Government, and we both agree that my client

2   is eligible for a reduction pursuant to 2D1.1(b)(17).  So we

3   both agree that he is eligible for that two level reduction.

4            Your Honor, obviously, we do not waive the

5   arguments that were represented by way of motion and that

6   were moved by the Court in docket 56 as to if the Court is

7   able to go under the 10-year mandatory minimum.  So we make

8   those arguments part of the record.  We won't go into them.

9            Once again --

10           THE COURT:  No, I understand.

11           What you are saying is that you are objecting to

12  the fact that I decided that in this type of case, which is

13  filed under Title 46, the safety valve is not applicable, but

14  that the Defendant may qualify for a two level reduction

15  under 2D1.1(b)(17).  So that's the situation, except that the

16  important thing about that is that, under the safety valve, I

17  am allowed to sentence a defendant below the statutory

18  minimum.  Under 2D1.1(b)(17), I am not allowed to sentence a

19  defendant below the statutory minimum.  That's the

20  difference.

21           So you retain that objection.  I mean, it's on the

22  record, anyway.

23           MS. IRIZARRY:  Understood, Your Honor.

24           Then my second objection to the PSR would be,

25  Your Honor, that we understand that my client's participation

1  in the instant offense --

2           THE COURT:  Well, let me ask, Mr. Henek.

3           You have no problem that Mr. De La Cruz qualifies

4  under 2D1.1(b)(17)?

5           MR. HENEK:  Correct, Your Honor.  We would agree to

6  a two point reduction.  So the PSR should -- the parties have

7  agreed that the PSR, the total offense level would be a level

8  33 instead of a level 35.

9           THE COURT:  Thank you.

10          Your next objection, please.

11          MS. IRIZARRY:  Yes, Your Honor.

12          We understand that his participation merits the two

13  level reduction under 3B1.2(b) for minor roll, which also

14  carries a four level additional adjustment under 2D1.1(a)(5),

15  Your Honor.  So we would like to argue as to that.

16          Your Honor, as the Court is aware, we have the

17  burden to establish to the Court, by preponderance of the

18  evidence, that he is eligible or entitled to that minor role

19  adjustment.  And the Court must make an individual assessment

20  as to if in this particular case the Court understands that

21  he is eligible for said adjustment.

22          For purposes of arguing that adjustment, we refer

23  to our sentencing memorandum at docket 89, page 3, third

24  paragraph, and page 4.

25          THE COURT:  You even made the calculation in your

1  sentencing memorandum.

2      MS. IRIZARRY:  Right now, yes.  What I am talking

3  about the arguments in favor --

4      THE COURT:  I read it.  But you made the

5  calculation on page 5.

6      MS. IRIZARRY:  Yes, Your Honor.

7      THE COURT:  That considering what you request, the

8  total offense level would be 27 and that the guideline range

9  would be 70 to 87 months, if I were to accept the minor role

10  deduction and the -- the two minor role deductions.  Although

11  you -- well, it's not a safely valve, the 2D1.1(b)(17), which

12  the Government agrees to.

13      MS. IRIZARRY:  Yes, Your Honor.

14      THE COURT:  Plus the three levels for acceptance of

15  responsibility.

16      MS. IRIZARRY:  And the two pages prior to that

17  table that the Court is referencing to, basically, what I did

18  in the sentencing memorandum is that I mirrored the list of

19  factors that are mentioned in Application Notes 3(A) and (C)

20  of 3B1.2.  Basically, Your Honor, we understand that our

21  client is a drug courier or a drug mule, which, considering

22  his particular circumstances, the Court should grant the two

23  level minor participant.

24      Your Honor, in this particular case, he was hired

25  to transport some controlled substances.  He was not in

1  charge of the vessel, of the trip, and much less played any

2  role in the planning of the trip.  There is a captain, which

3  the Court has already sentenced to ten years of imprisonment.

4  There is a first mate, which the Court has already sentenced

5  to a 10-year imprisonment term.

6          THE COURT:  I don't think there was any evidence of

7  who was a captain and who was a first mate.  I don't think in

8  this case there was any evidence as to that, whether one of

9  the three individuals was the captain or one was the first

10  mate, or whether all three can be considered as captains

11  because they took turns in steering the vessel.  I don't

12  think there was any evidence as to that.

13          So I didn't take into consideration in sentencing

14  any of the others that anybody was a captain.

15          MS. IRIZARRY:  Your Honor, I'm proffering to the

16  Court that that was the rules that is consistent, I believe,

17  with the information that the Government received through the

18  three interviews of the three Defendants.  So I am proffering

19  to the Court that my client's role was neither the captain,

20  nor the first mate.  That he was basically just the muscle or

21  the help.  And in relation to the other two, his role was

22  less.

23          Your Honor, he was going to be paid one shot for

24  doing this trip.  He had no propriety interest in the

25  criminal activity.  He just was hired to do a certain task.

1    His participation was very limited in nature and in

2  extent.  He was approached a couple days before leaving, and

3  he was offered to be paid a certain amount of money for

4  participating in the venture.

5    He had no discretion as to the fact -- the acts

6  that he was ordered to do in the venture.  He was not part of

7  the inner circle in organizing any part, neither before,

8  after, nor during the trip.

9    What he did was neither essential, nor dispensable.

10  In fact, what he did could have been done by anyone.

11    We understand, as argued in the sentencing

12  memorandum, that if we consider what he did in this case, in

13  particular, in making assessment as to this case and his

14  acts, that it merits the two level decrease for acceptance

15  of -- sorry -- for minor role, plus the four level one that's

16  included in the 2D1.1 guideline, Your Honor.

17    In contrast, I argue, Your Honor, this Court just

18  sentenced a gentleman by the name of Harry Oyola-Lebron.

19  That man was charged in a multi-defendant, multi-kilo

20  conspiracy; whereas, the Court noted for the record, there

21  were firearms, and those firearms were used to kill people.

22  It was charged as a minimum -- mandatory minimum 10-year drug

23  conspiracy; 10 to life.

24    Mr. Oyola-Lebron was allowed to plead guilty to

25  less amount of drugs, hence 3.5 to 5 kilograms.  So that

1  triggered the 5- to 40-year mandatory minimum, rather than

2  the 10 year to life.

3          As the Court stated, in that case he had a

4  leadership enhancement, he had a weapon enhancement, he had

5  prior acts committed in the '90s that were violent priors

6  with weapons.  He had several arrests for different offenses,

7  which did not result in any conviction.  And in the

8  particular case that the Court was sentencing him, he pled

9  guilty to an agreement, which gave him the leadership role

10  and also the firearm enhancement.  That man was sentenced to

11  108 months of imprisonment.

12          Your Honor, in contrast, what we have here today is

13  a first-time Defendant of 27 years old with no history

14  whatsoever of controlled substance abuse.  He was raised in a

15  stable household, very poor, and he has a stable family

16  because he has been -- in the only relationship he has been

17  in his life, which is with his wife, his wife of four years,

18  common-law wife of eight years.  They have two children, two

19  small children.

20          My client's economic situation, which led to the

21  participation of this offense, is that his mother, who was a

22  pillar of society, who pushed him to enroll in college -- he

23  finished his high school education.  He was enrolled in

24  college.  He was working part-time.  Fatima, his wife, was

25  working part-time; she died.

When she died, she left behind his two siblings, sisters, who were minors at that time, and his oldest brother who suffers from polio. And all of them depended on his mother, who was also an artist and in sales in the artisan trade, Your Honor.

He had to abandon his studies so that he could support his family. His roof was falling in. He didn't have a medical plan for his siblings. His wife had a condition which required surgery. He didn't have a vehicle to transport his family. And that's when he was approached with the participation in the instant offense.

Everybody knows who his mother was. Everybody knows that this honest family was -- what they were suffering, and somebody took advantage and offered him a way out.

He had been three years trying to support this family, this extended family, but not being able to. And that's why he participated in the instant offense.

Your Honor, in contrast, there is no way that it could be reasonable for this man to receive a 120-month sentence or 135, which is the lower end of the applicable guideline range, when you have by contrast this other person who has just been sentenced to 108 months, Your Honor.

This is --

THE COURT: But that person was sentenced under

1    different statutes.

2              MS. IRIZARRY:  Exactly, Your Honor.

3              THE COURT:  So you can't compare apples and

4    oranges.

5              MS. IRIZARRY:  Nevertheless, we can compare as to

6    roles, Your Honor.  We can compare as to mitigating factors,

7    Your Honor, for this Court to consider a variant sentence.

8              We know the Court's ruling, that the Court believes

9    that you cannot go under the 120 months.

10             Obviously, our request is 70 months, but we respect

11   the Court's ruling.  But in no way can it be reasonable for

12   this person to receive a sentence of above 120 months,

13   Your Honor.

14             Also, we would like the Court --

15             THE COURT:  Okay.  So that's your request?  Your

16   request is 120 months.

17             MS. IRIZARRY:  No.  My request is 70 months,

18   Your Honor.  But we respect -- we know how the Court feels as

19   to that it cannot go under the 120 months.

20             THE COURT:  Okay.

21             MS. IRIZARRY:  Your Honor, we also ask for the

22   Court to rule on our -- on the facts of this particular case

23   in relation to the minor role that we are requesting.

24             THE COURT:  Thank you.

25             Mr. Henek, what is your position on the minor role?

1          MR. HENEK:  Good morning, Your Honor.

2          Your Honor, the Government opposes any application

3     of minor role, and on this basis, Your Honor:

4          The facts are very simple in this case.  The

5     Defendant was -- Mr. De La Cruz was found on a boat with two

6     other individuals transporting over 1,300 kilograms of

7     cocaine, Your Honor.  That is approximately $26 million of

8     cocaine at current prices in Puerto Rico.

9          The Defendant has failed to meet their burden of

10    proving any minor role reduction.  The First Circuit has held

11    on numerous occasions that the role of a courier does not

12    automatically entitle one to a reduction.

13         Similarly, Defense Counsel's arguing or trying to

14    argue that Mr. De La Cruz performed some type of menial task.

15    Again, the First Circuit has denied a minor role adjustment

16    where the Defendant has performed only menial tasks, such as

17    unloading drugs and conducting surveillance.

18         For the record, that's *United States v.*

19    *Ortiz-Santiago* 211 F.3d 146.

20         In addition, Your Honor, one particular case is

21    instructive with respect to minor role adjustment in boats

22    and narcotics trafficking.  That's *U.S. v. Perez* 819 F.3d

23    541.

24         In that case, the First Circuit upheld the District

25    Court's denial of a minor role application where two

1   defendants were found onboard of a vessel with approximately

2   a thousand kilos of cocaine.  Here we have more than that.

3   We have 1,325 kilos.

4         Finally, Your Honor, with respect to the minor role

5   reduction, quantity is relevant in determining whether or not

6   a minor role application is warranted.  And on numerous

7   occasions, Courts have held that a far -- a substantially

8   less amount, in fact, under 100 kilograms of cocaine, does

9   not qualify for minor role.  So I will just cite one or two

10   cases.

11         In the First Circuit, *U.S. v. Vargas* 560 F.3d 45,

12   there the denial of a mitigating role adjustment was affirmed

13   when the amount was only 30 kilograms of cocaine.

14         And I will cite a Ninth Circuit case, *U.S. v.*

15   *Rodriguez-Castro* 641 F.3d 1189.  That, a denial of a

16   mitigating role was denied in a case only involving

17   33.46 kilograms of cocaine, which the Court considered was a

18   substantial amount.  Therefore, denying the mitigation role.

19         So, on the facts of this case, Your Honor, we would

20   disagree with any application of a minor role based on

21   quantity, as well as the role that this -- Mr. De La Cruz was

22   one of three people actively transporting 1,300 kilos of

23   cocaine towards Puerto Rico.

24         Accordingly, we also agree with the Court's

25   determination that the safety valve does not apply in this

1    case.  Therefore, with a total offense level of 33, the

2    United States would request a sentence at the lower end of

3    the guideline range of 135 months, Your Honor.

4              THE COURT:  Mr. De La Cruz, is there anything you

5    would like to say?

6              DEFENDANT DE LA CRUZ:  Yes, sir.

7              THE COURT:  Before you start --

8              Ms. Irizarry, I am going to deny your request for a

9    minor role, basically, for the reasons stated by the

10   Government; number one, he was entrusted with 1,325 kilos,

11   approximately $26 million worth of cocaine, and certainly

12   that trust, plus the amount of cocaine involved, does not

13   warrant a minor role reduction.

14             So, Mr. De La Cruz, what is it that you want to

15   say?

16             DEFENDANT DE LA CRUZ:  I want to apologize, and I

17   want to ask for forgiveness to the Government of the United

18   States and to Puerto Rico and each one of the citizens

19   present here.

20             You can imagine what my situation is, a young

21   23-year-old whose mother passes away, left in charge of her

22   siblings, having to meet all their needs.  And this is the

23   situation I suffered for five years, barely being able to

24   support the family.  I was in a very sad and critical state

25   of affairs, financially speaking.

1    As my attorney explained, that whole situation led
2    me to commit this offense of which I am very repentant.  I
3    promise that this time that I will be incarcerated, I will
4    try to work in something that will benefit me.

5    In general, what I really want is to find my family
6    well again and to be able to return in time to help them out,
7    because I know they need me during this time.

8    That's all.  Thank you very much, sir.

9    THE COURT:  On March 26, 2018, Defendant Angel
10    De La Cruz pled guilty to all three counts of the indictment
11    pursuant to a straight plea in Criminal Case No. 17-648,
12    which charges violations of Title 46, United States Code
13    sections 70503 and 70506; Title 21, United States Code
14    section 952; and Title 18, United States Code section 2,
15    conspiracy to possess, possession with intent to distribute,
16    and conspiracy to import approximately 1,325 kilograms of
17    cocaine onboard a vessel subject to the jurisdiction of the
18    United States, and aiding and abetting others to do that; all
19    are class A felonies.

20    The November 1st 2016 Edition of the Sentencing
21    Guidelines Manual has been used to calculate the guideline
22    adjustments pursuant to the provisions of guideline
23    section 1B1.11(a) because the Commission did not promulgate
24    any amendments that would become effective on November 1,
25    2017.

1    Counts One through Three were grouped together

2  because the offense level is determined on the basis of the

3  quantity of the substance involved pursuant to guideline

4  section 3D1.2(d).

5    Based on the provisions of guideline section

6  2D1.1(c)(1), a base offense level of 38 has been determined

7  because Mr. De La Cruz has been convicted of conspiracy to

8  possess with intent to distribute and importing into the

9  United States at least 450 kilograms of cocaine, a total of

10 1,325 kilograms.

11   Because Mr. De La Cruz complied with the provisions

12 of sentencing guideline section 2D1.1(b)(17), the base

13 offense level is reduced by two levels.

14   Because Mr. De La Cruz timely accepted

15 responsibility for his offenses, however, the offense level

16 is reduced by three more levels pursuant to guideline

17 sections 3E1.1(a) and 3E1.1(b).

18   There are no other applicable guideline

19 adjustments.

20   His total offense level is 33.

21   Because Mr. De La Cruz has no previous convictions,

22 no criminal history points resulted, which places him in

23 Criminal History Category I.

24   Based on a total offense level of 33 and a Criminal

25 History Category of I, the guideline imprisonment range for

1    Mr. De La Cruz's offenses is from 135 to 168 months.

2              There is a fine range of $35,000 to $10 million,

3    plus a supervised release term of at least five years.

4              The probation officer has correctly applied the

5    guideline computations, and the pre-sentence investigation

6    report satisfactorily reflects the components of

7    Mr. De La Cruz's offenses by considering their nature and

8    circumstances.

9              The Court has also considered the other sentencing

10   factors set forth in Title 18, United States Code

11   section 3553(a).

12             Mr. De La Cruz is a 27-year-old Dominican national

13   who has the equivalent of a high school education.  He has

14   been a self-employed fisherman all of his life.

15             He has no known history of using controlled

16   substance or of using alcohol to excess, and has no history

17   of mental health issues.

18             The Court will exercise its discretion and impose a

19   variant sentence, taking into consideration factors related

20   to the offense and Mr. De La Cruz.  Mr. De La Cruz is an

21   undocumented person with no prior criminal record who is

22   subject to removal proceedings pursuant to the immigration

23   laws.

24             A sentence at the statutory minimum is a sentence

25   which is sufficient but not greater than necessary to reflect

1  the seriousness of the offense, promote respect for the law,

2  provide just punishment -- and provide just punishment for

3  the offense.

4           Accordingly, it's the judgment of the Court that

5  that Angel De La Cruz is committed to the custody of the

6  Bureau of Prisons to be imprisoned for a term of 120 months

7  as to each count of conviction, to be served concurrently

8  with each other.

9           Upon release from confinement, Mr. De La Cruz shall

10  be placed on supervised release for a term of five years as

11  to each count of conviction, to be served concurrently with

12  each other, under the following terms and conditions:

13           He shall observe the standard conditions of

14  supervised release recommended by the United States

15  Sentencing Commission and adopted by this Court.

16           He shall not commit another Federal, State, or

17  local crime.

18           He shall not possess firearms, destructive devices,

19  or other dangerous weapons.

20           He shall not possess controlled substances

21  unlawfully.

22           If deported or granted voluntary departure,

23  Mr. De La Cruz shall remain outside the United States and all

24  places subject to its jurisdiction, unless prior written

25  permission to reenter is obtained from the pertinent legal

authorities and he notifies the probation officer of the

permission in writing.

He shall cooperate in the collection of a DNA

sample as directed by the probation officer pursuant to the

revised DNA collection requirements and Title 18, United

States Code section 3563(a)(9).

Having considered Mr. De La Cruz's financial

condition, a fine is not imposed.

A special monetary assessment in the amount of $100

per count, for a total of $300, is imposed, however, as

required by law.

Mr. De La Cruz, you have a right to appeal your

conviction and your sentence.

A notice of appeal must be filed in this court

within 14 days from when the judgment of the Court will be

entered.

You have a right to apply for leave to appeal

*in forma pauperis* if you are unable to pay the cost of an

appeal.

Because you are represented by court-appointed

counsel, she will continue to represent you through any

appeal, unless a substitute counsel is later appointed.

Is there anything else?

MS. IRIZARRY:  Yes, Your Honor.

We request that he be sent to serve his sentence in

1  a place where he can learn English as a Second Language.  He

2  already has a high school degree.  So we also request that he

3  be allowed to continue his studies, in particular English as

4  a Second Language.

5        He is also requesting that, if possible, the Court

6  recommend that he be sent to serve his sentence in Fort Dix,

7  or -- he is mentioning Mochannon Valley.  I am not sure if

8  the Court is aware of where this is, but I can inform -- I

9  can file a small informative motion when I get back to my

10  office to try to clear up -- he says it's in the State of

11  Georgia.  So I will file -- when I get back to the office,

12  I'll file it.

13        Yes, Your Honor.  That's our request.

14        And, also, Your Honor, we would like the record to

15  reflect that we understand that the sentence has been

16  substantially and procedurally unreasonable for the reasons

17  we have stated on the record.

18        THE COURT:  I will recommend that Mr. De La Cruz be

19  designated either to Fort Dix or that other place in Georgia,

20  where you will inform me; that he take courses in English as

21  a Second Language; and that he participate in any vocational

22  training that may be afforded at the institution in which he

23  may be interested.

24        MS. IRIZARRY:  Or degree, since he has his --

25        THE COURT:  Pardon?

1           MS. IRIZARRY:  Or any degree, because he has --

2           THE COURT:  Well, if there are college level

3     courses that he may take, then that also.

4           MS. IRIZARRY:  Thank you, Your Honor.

5           THE COURT:  I bet it's more -- there is more of a

6     chance that there will be English as a Second Language

7     courses in Fort Dix than in Georgia, really, but we will find

8     out.

9           Thank you.

10          You are excused.

11          MS. IRIZARRY:  Thank you, Your Honor.

12          MR. HENEK:  Thank you, Your Honor.

13

14          (PROCEEDINGS ADJOURNED AT 10:50 A.M.)

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, JOE REYNOSA, Official Court Reporter for the United States District Court for the District of Puerto Rico, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a true and correct computer-aided transcript of proceedings had in the within-entitled and numbered cause on the date herein set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.

S/Joe Reynosa

_____

**JOE REYNOSA, CSR, RPR**
United States Court Reporter
Federico Degetau Federal
Building, Room 150
150 Carlos Chardón Street
San Juan, Puerto Rico 00918-176
(787) 772-3000

Joe Reynosa, CSR, RPR
Official Court Reporter